## In re WILSON.

### Patent Appeal No. 3372.

Court of Customs and Patent Appeals.
Jan. 7, 1935.

Joseph R. Mares, of St. Louis, Mo., for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

The appellant filed an application in the United States Patent Office for a patent on an alleged improved process of producing alum and silicious material from clay. Thirty-two claims were included in the application, all of which were rejected by the Examiner and Board of Appeals. The Ex-

aminer rejected the same on reference to the following patents: Pochin (Br.), 562 of 1856; Llewellyn (Br.), 112,881, January 31, 1918; Llewellyn (Br.), 119,924, October 24, 1918.

To these references, the Board added the following: Booze, 1,594,402, August 3, 1926; Ikeda et al., 1,630,660, May 31, 1927.

The appellant's process, as detailed in his specification, is practiced as follows: Wet clay is extruded from a press, through dies, to produce short cylinders, each approximately 3/32 of an inch in diameter and from 1/4 to 5/8 of an inch long. These forms of clay are dried and calcined, the calcining being done from twenty minutes to an hour, at a temperature from 650 degrees to 850 degrees centigrade. In connection with this, the appellant stated in his specification: "It will be understood that the invention is not limited to any particular size and shape of clay bodies." Further, the appellant said: " * * * Hence in the appended claims by 'bodies' is meant shapes or sizes no matter how formed from a mass of relatively smaller clay particles rendered plastic by the presence of water and whether uniform or not in respect to volume and geometric proportions."

These calcined cylinders are placed in an apparatus consisting of six tanks, each lined with a substance inert to sulphuric acid. Here, by means of a revolving tank of said acid, and a revolving tank of water, and certain connecting pipes, these cylinders are treated with sulphuric acid, by which means aluminum sulphate, or alum, is produced in the form of a clear liquor, without distintegration of the cylinders. The cylinder forms remaining constitute porous masses of chemically active silica, and may be used as a "surrogate," or substitute, for fuller's earth.

In practicing the process, the tanks and pipes are so arranged that the partially exhausted clay bodies are successively treated with fresh acid, and the fresh clay bodies are treated with the weak and partly exhausted acid.

The Board of Appeals was of opinion that claims 1, 23, and 24 were representative of all the claims. They seem to be so, and are here quoted. In addition, claims 5 and 8 are commented upon by appellant in his brief, and these are also quoted:

"1. The process of producing aluminum sulphate from clay which comprises leaching calcined clay bodies with sulphuric acid to dissolve alumina while maintaining said bodies substantially undecrepitated whereby the aluminum sulphate liquor is substantially free from solid particles from said bodies.

"5. The process of producing aluminum sulphate from clay which comprises dissolving alumina from calcined clay bodies with sulphuric acid not over from about 30 to 35% concentration.

"8. The process of producing aluminum sulphate from clay which comprises calcining clay bodies at a temperature from 650 to 850 degrees C, leaching said bodies with sulphuric acid to dissolve alumina therefrom, and regulating the concentration of said acid to dissolve the alumina without substantial decrepitation of said bodies.

"23. The process of producing aluminum sulphate from clay comprising forming the clay into bodies of material size, calcining the bodies to produce sulphuric acid soluble alumina therein with incipient fusion, and dissolving alumina from said bodies by treating them with dilute sulphuric acid, such treatment comprising utilization of a plurality of tanks or the like respectively containing the calcined clay bodies in batches of various degrees of exhaustion, passing water through said plurality of tanks in succession, the last tank of said series in respect to the flow of liquor containing fresh clay and the first tank and immediately succeeding tank containing the most exhausted clay; adding the acid to a plurality of tanks intermediate the two first tanks and the last tank of the series; and from time to time dumping the washed clay from the first tank of the series and refilling it with fresh clay, and then passing the water through said tanks to cause said refilled tank to be the last tank of the series in respect to the flow of liquor.

"24. That process of producing porous material which comprises calcining clay bodies to incipient fusion and leaching out the alumina."

The gist of the appellant's alleged inventive process, as contended by him, is that he forms clay bodies of pulverent clay, from which he can extract aluminum sulphate liquor; that the liquor is clear and uncharged with suspended material; and that the remainder can be utilized as a substitute for fuller's earth. Evidently there is no particular significance to the fact that the clay bodies are cylinder shaped, nor is there any contention that this shape is critical, or aids in the process. Again, while claims 5 and 8, quoted, give certain percentages of acid, and certain degrees of heat used in the proc-

ess, the specification does not denote, in any way, that these percentages are critical.

The Board of Appeals was of opinion that the references, especially the patents of Llewellyn, fully anticipated appellant's disclosure. Llewellyn, 112,881, discloses a process of preparing crude sulphate of alumina solutions, in which crushed bauxite is calcined, placed in a suitable vessel, and treated with sulphuric acid. A system of vessels is arranged by which the most exhausted bauxite is treated with fresh acid, and the unexhausted material treated with the more exhausted acid, in the same manner as appellant's process is practiced. The portions of bauxite treated are designated as "small pieces or lumps." A similar disclosure is made by Llewellyn in No. 119,924. Here, also, no change is made in the form of the pieces or particles used during the process.

It will be observed that the only apparent difference between the disclosure of these patents and the present application is that Llewellyn crushes his raw material into pieces before burning, while the appellant builds his pieces up from pulverent clay. The residue, after processing, is the same, except as to form, and is obviously adaptable for the same uses.

The patent to Pochin fully discloses the availability of this residuum, in these words appearing in his specification:

" * * * The mineral, prepared by the above method, can be employed with advantage in the manufacture of aluminous cake, pure sulphate of alumina, the alums of commerce, and other aluminous compounds, *whilst the silica afforded can be used for those purposes for which pure silica is required.*" (Italics ours.)

We are advised by the record that the manner of making the clay body used by the appellant in his process is fully claimed in a copending application of the appellant in the Patent Office, No. 430,456, and no expression is desired to be made here as to the patentability of said process. So far as the formation of said clay bodies concerns the claims here involved, we are of opinion that the formation of such or similar bodies is fully shown by the additional references cited by the Board of Appeals, Booze and Ikeda et al.

As to claim 5, which specifies the degree of concentration of acid, the patents of Llewellyn both show that the concentration should be such as to prevent breaking down the clay bodies, and it does not appear that the particular degrees of concentration specified by the appellant are critical, or make any additional disclosure over Llewellyn's patents. The same is true as to claim 8, which specifies the range of temperatures used by the appellant.

The appellant argues that the patents to Ikeda et al. and Booze relate to nonanalogous arts, and ought not to be used as references here. Without conceding the correctness of this position, it seems that even if such patents were not anticipatory, there appears to be no reason why the clay bodies of the appellant will operate any differently in the process than will the clay particles used by Llewellyn in his patents. If the shape or size of the appellant's clay bodies is important or critical, the same is not shown by his application, or claimed in the argument of counsel.

We, therefore, are of opinion that the decision of the Board of Appeals is without error, and it is affirmed.

Affirmed.